IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN ARTHUR WALKER, JR.,

    Defendant.

Case No. 23-CR-311-JFH-1

## OPINION AND ORDER

Before the Court is a Motion for Sanctions against the Government for Spoliation of Evidence ("Motion") filed by Defendant John Arthur Walker, Jr. ("Defendant"). Dkt. No. 37. The United States of America ("Government") filed a response in opposition. Dkt. No. 43. For the following reasons, Defendant's Motion [Dkt. No. 37] is DENIED.

## BACKGROUND

On August 16, 2023, Debra Motes ("Motes") called 911 to report the kidnapping of her friend, D.G., from the parking lot of the Econo Lodge hotel in Broken Arrow, Oklahoma. Dkt. No. 37-1 at 3. Motes reported that D.G. was grabbed by the throat and the back of the head by a Black male and forced into the backseat of a white Chevrolet Suburban. *Id*. Motes provided the dispatcher with the vehicle's license plate number and stated that it left the parking lot traveling in an unknown direction. *Id*.

Shortly thereafter, Officer Dawson Bradley ("Officer Bradley") with the Broken Arrow Police Department ("BAPD") responded to the scene at the Econo Lodge. *Id*. Upon arriving, Officer Bradley reviewed the Econo Lodge security footage and concluded that it supported Motes' report. Dkt. No. 37-1 at 4. Officer Bradley requested a "ping" of D.G.'s cellphone and it

was determined that she was near the Tulsa fairgrounds. *Id*. Another BAPD officer recorded the Econo Lodge security footage with his patrol camera to preserve that evidence. *Id*.

Officers with the Tulsa Police Department ("TPD") were dispatched to canvas the area near the Tulsa fairgrounds and located a white Suburban with the license plate number provided by Motes. *Id*. TPD initiated a traffic stop and D.G. was found in the backseat of the vehicle. Dkt. No. 37-1 at 4. The driver of the vehicle was identified as Co-Defendant Eric Ray Myers ("Co-Defendant Myers") and the front seat passenger was identified as Defendant. *Id*.

D.G. was interviewed as part of BAPD's investigation. D.G. reported that Defendant grabbed her by the neck and pushed her into a white Suburban in the Econo Lodge parking lot. Dkt. No. 37-2 at 2. D.G. stated that she was then taken to the Expo Inn hotel in Tulsa, Oklahoma. *Id*. While in transit from the Econo Lodge to the Expo Inn, D.G. reported that Defendant struck her multiple times with a closed fist. *Id*. When they arrived at the Expo Inn, D.G. and Defendant went into a hotel room for approximately thirty minutes, while Co-Defendant Myers waited in the vehicle. *Id*. While in the hotel room, Defendant struck D.G. again, multiple times, and threatened her "with further violence if she did not pay him money that she owed him." Dkt. No. 37-2 at 2. D.G. stated that she and Defendant then returned to the vehicle and Co-Defendant Myers began driving again shortly before the vehicle was pulled over by TPD. *Id*. During the interview, the officer noted visible markings on D.G.'s neck and throat which corresponded with D.G. and Motes' statements that Defendant had grabbed D.G. by the throat and neck before pushing her into the Suburban. Dkt. No. 37 at 3, Ex. 8.

On September 15, 2023, the Federal Bureau of Investigation ("FBI") attempted to collect the Expo Inn security footage. Dkt. No. 43 at 2. However, hotel management informed the FBI

that they only store security footage for five (5) days before erasing it and, therefore, footage from the day of the alleged kidnapping was no longer available. *Id*.

On September 18, 2023, an indictment was filed charging Defendant and Co-Defendant Myers with Kidnapping in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 1201(a)(2). Dkt. No. 15. This case is set for jury trial on the Court's December 11, 2023 docket. Dkt. No. 45.

Defendant argues that officers' failure to obtain the security footage from the Expo Inn prior to it being destroyed requires sanctions. Dkt. No. 37. Specifically, Defendant asks the Court to dismiss the indictment as to Defendant or, in the alternative, bar the Government from introducing its "most probative evidence" at trial. *Id*. at 13. Defendant argues that sanctions are appropriate here because the exculpatory value of the Expo Inn security footage was apparent before it was destroyed, Defendant is unable to obtain comparable evidence by other means, and the government acted in bad faith in failing to preserve the Expo Inn security footage. *Id*.

## AUTHORITY AND ANALYSIS

The Due Process Clause of the Fourteenth Amendment requires the government to preserve evidence that is constitutionally material to a defendant's case. *California v. Trombetta*, 467 U.S. 479, 480-81 (1984). Evidence is constitutionally material if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489. The Supreme Court has extended this principle to evidence which is not apparently exculpatory but only "potentially useful" for the defense, where the defendant shows that the government acted in bad faith by failing to preserve the evidence at issue. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Defendant bears the burden of demonstrating bad faith under *Youngblood*. *United States*

*v. Bohl*, 25 F.3d 904, 913 (10th Cir. 1994) (citing *United States v. Donaldson*, 915 F.2d 612, 614 (10th Cir. 1990)).

First, the Court must determine whether the exculpatory significance of the Expo Inn security footage was "apparent" or only "potentially useful." If apparent, the Court will apply *Trombetta* and determine whether Defendant could obtain comparable evidence by other means. If potential, the Court will apply *Youngblood* and determine whether Defendant has demonstrated that the government acted in bad faith.

Defendant argues that the exculpatory value of the Expo Inn security footage was apparent to officers prior to it being erased. Dkt. No. 37 at 7. Specifically, Defendant argues that Motes' witness statement, D.G.'s victim interview, and other unnamed "information known to the police," revealed several inconsistencies which suggested that D.G. "may not have been truthful in her statements." *Id*. Defendant summarily contends that these inconsistencies made it apparent that the Expo Inn security footage had exculpatory value. *Id*. This Court disagrees.

Defendant's insistence that the Expo Inn security footage was exculpatory is merely speculative. Defendant urges that the security footage would have shown that D.G. "willingly" entered and exited the hotel room at the Expo Inn with Defendant, thereby proving that Defendant did not kidnap D.G. Dkt. No. 37 at 7. However, D.G.'s "willingness" is not objectively observable by video footage. According to D.G., Defendant forcibly took her from the Econo Lodge parking lot and struck her multiple times while traveling to the Expo Inn. Inside the Expo Inn hotel room, D.G. alleges that Defendant continued striking her and threatened her with further violence. Under these circumstances, D.G.'s compliance in walking to and from the Expo Inn hotel room could have been out of fear and in an attempt to avoid further harm. In other words, even if the security footage had shown D.G. walking calmly to and from the hotel room, she still may not have been

doing so "willingly."  At best, the video footage could have been potentially helpful to Defendant, but certainly not exculpatory.

Regardless, even if the Expo Inn security footage had some exculpatory value, the Court finds that nothing about the investigation would have made its exculpatory value apparent to officers prior to it being erased.  While Defendant highlights a few inconsistencies between Motes and D.G.'s statements to police, their statements were, in large part, consistent with each other and corroborated by the Econo Lodge security footage.  Likewise, Defendant's analysis of D.G.'s behavior before, during, and after the alleged kidnapping is subjective and based on Defendant's own belief about how a kidnapping victim would or should behave.  For example, Defendant contends that it should have been apparent to officers that D.G. was not truly kidnapped because she "was cognizant to bring [a] McDonald[']s bag with her [when she got into the Suburban in the Econo Lodge parking lot] so that she could finish eating."  Dkt. No. 37 at 8.  However, it is just as likely that D.G. held on to the bag as a result of a "freeze" stress response to her perceived threat by the Defendant.  Defendant also argues that text messages between D.G. and Co-Defendant Myers should have made it apparent to officers that the Expo Inn security footage was exculpatory.  Dkt. No. 37 at 8-9.  However, pursuant to the parties' joint status report, the Government was not made aware of these text messages until the week of September 25, 2023, *after* the FBI had attempted to obtain the Expo Inn security video footage and *long after* the video footage had been erased by the Expo Inn.  Dkt. No. 59 at 2.  Plainly, the exculpatory value of the Expo Inn security footage, if any, was not apparent to officers prior to it being erased.  *Youngblood*, not *Trombetta*, applies, and the Court must now consider whether the government acted in bad faith.

Defendant argues that officers' failure to obtain the Expo Inn video footage "was in bad faith since they had knowledge of the value of this evidence through their investigation."  Dkt. No.

37 at 11. As the Court has already found, the exculpatory value of the Expo Inn security footage, if any, was not apparent. Therefore, officers' failure to obtain the Expo Inn video footage was, at most, negligent. "[M]ere negligence on the government's part in failing to preserve [ ] evidence is inadequate for a showing of bad faith." *United States v. Parker*, 72 F.3d 1444, 1451 (10th Cir. 1995) (quoting *Bohl*, 25 F.3d at 912)).

Defendant also argues that officers acted in bad faith because they failed to comply with their own policies and procedures in failing to obtain the Expo Inn security footage. Dkt. No. 37 at 11 (citing *Trombetta*, 476 U.S. at 448). Among other TPD policies, Defendant cites to TPD Policy No. 112H, which states that "[e]mployees shall not ignore evidence that could be exculpatory" and that they "shall provide the prosecuting authority with evidence that could be exculpatory as soon as they are made aware of it." *Id*. (emphasis removed).[1] Again, the exculpatory value of the Expo Inn security footage, if any, was not readily apparent to officers prior to the footage being erased and, therefore, Defendant's argument fails. Defendant has not met his burden of demonstrating bad faith and, therefore, Defendant's Motion must be denied.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Sanctions Against the Government for Spoliation of Evidence [Dkt. No. 37] is DENIED.

Dated this 7th day of November 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[1] As an aside, it appears that the investigation in this matter was led by BAPD, not TPD. Therefore, it seems that the relevant policies and procedures would be that of BAPD, not TPD.