UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23-CR-311-JFH-1 |
| V. | ) |
| | ) |
| JOHN ARTHUR WALKER, JR., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Court conducted a hearing on defendant's motion to reopen detention hearing under 18 U.S.C. § 3142(f) (Doc. 52). Plaintiff opposed reopening the detention hearing and opposed release. The Court considered the Indictment, the Pretrial Services Report, the transcript of the original detention hearing (Doc. 61), additional exhibits, information, and arguments provided by the parties at the hearing, and found that detention remains warranted. Defendant was previously detained following his initial detention hearing. (Doc. 13).[1]

### I.  Applicable Standard

The applicable statute governing the defendant's motion to reopen detention hearing, 18 U.S.C. § 3142(f), provides as follows:

> The [detention] hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing

---

[1] The court reviewed defendant's submitted exhibits. One exhibit, an audio CD which plaintiff indicated was submitted to the court clerk (*see* Doc. 57-1), was not reviewed, as the clerk's office did not have the CD or record of having received it in physical form.

and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community.

"[R]econsideration [of a release or detention order] is permissible under this section only when there is new information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

## II. Defendant's Proffered New Information

As "new" information that was not known to defendant at the time of his initial detention hearing, defendant cites an affidavit by the alleged victim, D.G., which she provided to defendant's investigator in which D.G. recanted her earlier statement to police supporting the kidnapping charge. The defendant thus asserts that the weight of the evidence is weak such that it impacts the analysis of whether there are conditions of release that will reasonably assure the safety of others and defendant's future appearance. Because such information was not available at the time of the initial detention hearing and could have materially impacted the analysis of at least one of the factors under § 3142(g) (the weight of the evidence), the Court conducted a full hearing, permitting the parties to present additional information and argument bearing on the detention factors. However, upon consideration of all of the available evidence, the Court found that the motion should be denied and the defendant should be detained pending trial, which is currently scheduled to commence December 11, 2023.

### III.     Continued Detention Is Required

Considering the standard for reopening detention under 18 U.S.C. § 3142(f) as well as the § 3142(g) factors, the Court finds that continued detention is required, because D.G.'s affidavit, submitted after the prior detention hearing, does not materially bear on whether there are conditions of release that will reasonably assure the safety of any other person and the community.

**A.     Nature and Circumstances of the Charged Offense and Weight of the Evidence**

By way of Indictment, the grand jury found probable cause to believe that the defendant kidnapped D.G. on August 16, 2023. (Doc. 15). At the prior hearing, the court found the evidence against defendant to be strong. The weight of the evidence is somewhat less strong than before, as D.G. has now altered her version of what happened on August 16, 2023 and recanted her claim to have been kidnapped. In her affidavit, she states that the defendants "did not kidnap [her]!" She also reports that "this matter has been over exaggerated," and she "was not forced to get into the vehicle even though [they] were having a minor disagreement," after which they "made up" "after some discussion and going to [Walker's] motel." (Doc. 52-4).

While D.G. has provided different information than her original statement to police, a friend of D.G.'s allegedly witnessed the incident and she called 911 to report seeing D.G. grabbed by the throat by a man and forced into the back seat of the vehicle, the vehicle doors then locked, the man entered the passenger side of the vehicle, and the driver of the vehicle then drove away with D.G. in the back. The eyewitness promptly reported the

3

incident to law enforcement and provided a description of the vehicle and the license plate number. Police began looking for the vehicle, located it at a later time, initiated a traffic stop, and the defendant was located in the front passenger seat, and D.G. was in the back of the vehicle.

Consistent with the eyewitness's report, at the time of the police encounter, D.G. told police that the defendant grabbed her by her throat and pushed her to the vehicle and, once in the vehicle, the defendant allegedly struck her multiple times with a closed fist while the driver traveled to another location, a hotel room. According to D.G.'s initial statements to police, while in the room, the defendant continued to strike D.G. and threatened her with further violence if she would not give him money. D.G. was allegedly then taken back to the vehicle and she did not know where the driver and defendant were going to take her. D.G.'s new affidavit does not mention whether she was subjected to violence by the defendant while riding in the vehicle and while in the hotel room – both facts of which are consistent with her initial report of being forced into the vehicle and threatened. Video of the parking lot where the alleged kidnapping occurred is inconclusive, as it does not capture the full incident and is not necessarily inconsistent with D.G.'s prior statements to police on August 16, 2023.

Thus, while D.G.'s statement denies that she was "kidnapped," there is still evidence supporting the kidnapping charge and D.G.'s original claim that violence was involved has not been recanted.

### B. Defendant's History and Characteristics

The defendant proffered evidence that he has a full-time job that he could return to if released, he has significant contacts with this community, and strong family ties, including his mother who lives in Muskogee. Prior to arrest, defendant had been moving from hotel to hotel for some time, and he proposes to continue living and moving between extended stay hotels depending on where his jobs are. However, he has a significant number of criminal convictions spanning over 20 years. Those include multiple drug trafficking offenses and possession of a firearm after former felony conviction. He also has pending charges filed in April, 2023 for trafficking in controlled substances, possession of a dangerous substance, unlawful possession of a firearm, and driving while under suspension, and he was released on bond on April 11, 2023, on those charges at the time he allegedly committed the charged conduct in this case. His criminal history was also a factor in the original detention decision.

### C. Nature and Seriousness of the Danger Posed by Release

While D.G.'s affidavit impacts the weight of the evidence to some extent, as the court noted, her original contemporaneous statements to law enforcement after the vehicle was stopped were consistent with the eyewitness's statement that D.G. was forced into the vehicle against her will, and D.G. does not recant her prior statements as to violence during the vehicle ride and at the hotel room. In addition, the weight of the evidence was not the only factor previously relied upon in detaining the defendant, as the court noted his extensive criminal history and recent serious, pending charges, on which he was released on bond at the time of picking up the instant charge. The Tenth Circuit has recognized that,

5

in legislating pretrial detention under § 3142(e), Congress's "concern about safety is to be given a broader construction than the mere danger of physical violence" and that "[s]afety of the community 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'" *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (citations omitted). When explaining the concept of the statutory pretrial detention scheme, the Senate Committee on the Judiciary "emphasized that 'the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" *Id.* (citations omitted). In light of that and all of the other factors' analysis, the defendant's release would pose a potentially significant danger to others.

### IV. Conclusion

The Court finds that the new information proffered by defendant (*see* § II above) does not materially bear on whether there are conditions of release that will reasonably assure his appearance and the safety of the community. As a result, the defendant's Motion (Doc. 52) is **denied**. There are no conditions of release that will reasonably assure the safety of others, including D.G., such that defendant must continue to be detained pending trial, which is currently set to commence next month.

IT IS SO ORDERED this 20th day of November, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge